**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RECEIVED-CLERK
U.S. DISTRICT COURT

2006 DEC 28 P 2 53

Kimberly E. J. Moussavian
    Plaintiff

Civil No. 06-4818 (JLL)

-vs-

AMENDED
COMPLAINT and DEMAND
FOR JURY TRIAL

China Ocean Shipping (Group) Company, China Ocean Shipping Company Americas Inc. Cosco Americas Inc. Cosco North America Inc. (CNA), 100 Lighting Way, Inc., COSCO Container Lines Co. Ltd., Cosco Agencies Inc. (Cosag-Los Angeles) Cosco Services, Inc, Cosco terminals, Inc, Intermodal Bridge Services, Inc. (IBS): Sea Eagle Logistics, Inc, Sea Mark Management, Sea Trade International, Inc, Septor International, Inc., South Bay Lighting way, Inc., World Ocean (America). Inc., Yuan Hua Technical & Supply Corporation, Nancy Lu, James Kemp, Richard Stelzner, Chao Xu et al.

    Defendants

## PARTIES

Kimberly E. J. Moussavian, Plaintiff residing at 529 Hillcrest Street, Teaneck, New Jersey 07666.

China Ocean Shipping (Group) Company, China Ocean Shipping Company Americas Inc. Cosco Americas Inc. Cosco North America Inc. (CNA), 100 Lighting Way, Inc., COSCO Container Lines Co. Ltd., Cosco Agencies Inc. (Cosag-Los Angeles) Cosco Services, Inc, Cosco terminals, Inc, Intermodal Bridge Services, Inc. (IBS): Sea Eagle Logistics, Inc, Sea Mark Management, Sea Trade International, Inc, Septor International, Inc., South Bay Lighting way, Inc., World Ocean (America). Inc., Yuan Hua Technical & Supply Corporation, Nancy Lu, James Kemp, Richard Stelzner, Chao Xu et al. who maintain corporate offices and/or work in the United States of America at the location known as 100 Lighting Way, Secaucus, New Jersey.

## JURISDICTION

The action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. Section 2000e(5). Equitable and other relief are also sought under 42 U.S.C.

Section 200e(5)(g). Jurisdictions is also based on 28 U.S.C. Sections 1331, 1343 and 42 U.S.C. Sections 1981 et seq. court.

## NATURE OF CASE

1. The address at which I was employed by the defendants is 100 Lighting Way, Secaucus, New Jersey.

2. The discriminatory acts began occurring after April 12, 2004 and continued through March 29, 2005.

3. I filed charges with the Equal Employment Opportunity Commission regarding the defendant's discriminatory conduct on or about December 4, 2005.

4. The Equal Employment Opportunity Commission returned a "Notice of Right to Sue" which I received on July 10, 2006.

5. The discriminatory acts that are the basis of this suit are termination of my employment, denial of equal pay, general harassment, mental and emotional harassment, failure to accommodate my medical disability under New Jersey Law Against Discrimination and the Americans with Disabilities Act. I

6. In additional, the Defendant's engaged in the following acts against me negligent retention, false imprisonment and violations of New Jersey's wage and hour wage payment laws.

7. The Defendant's conduct is discriminatory with respect to my disabilities, race, color, national origin, and sex.

## CAUSE OF ACTION

1. I allege that the Defendants, have discriminated against me by allowing their Managers/employees to treat me differently and discriminate against me. The following facts form the basis for my allegations:

2. I began working for China Ocean Shipping Company Americas Inc./Cosco Americas Inc. (hereinafter "Americas") on April 12, 2004, in the position of corporate paralegal in the Corporate Legal Affairs Department. The nature of my position required I perform duties for all above-named Defendants.

3. All of the companies listed as Defendants are owned and operated by the same company and/or personnel.

4. The China Ocean Shipping (Group) Company (hereinafter "Group") worldwide headquarters are located in China.

5. The Group headquarters in the U.S.A are located in Secaucus, New Jersey.

6. In the U.S.A. the Group is known as China Ocean Shipping Company Americas Inc., Cosco Americas Inc. and/or Cosco North America Inc. (CNA). While they are separate entities each company operates as part of the Group.

7. All Defendant companies have Board of Directors members who sit on several company and subsidiary Boards owned by the Group.

8. Although Defendant companies appear to be separate companies they in fact share building space, supplies and resources, personnel etc.

9. China Ocean Shipping Company Americas Inc and Cosco Americas Inc. (hereinafter "Americas") are one in the same but use these names interchangeably.

10. 100 Lighting Way, Inc., COSCO Container Lines Co. Ltd., Cosco Agencies Inc. (Cosag-Los Angeles) Cosco Services, Inc, Cosco terminals, Inc, Intermodal Bridge Services, Inc. (IBS): Sea Eagle Logistics, Inc, Sea Mark Management, Sea Trade International, Inc, Septor International, Inc., South Bay Lighting way, Inc., World Ocean (America). Inc., Yuan Hua Technical & Supply Corporation are all subsidiaries of the Group and/or Americas.

11. Nancy Lu, James Kemp, Richard Stelzner and Chao Xu are all employed by companies within the Group. It is difficult to determine exactly which company each individual is employed by as they perform their duties for all companies but are paid by one company that is undeterminable by Plaintiff.

12. The Group and Americas are also liable for the actions the four individuals named in this complaint as they are responsible for hiring, training, supervising and disciplining these individuals.

13. Prior to being hired by Americas, the company was made aware of my medical conditions (both Christopher Weiss, Legal Counsel and my direct supervisor Mr. Chen Xuefeng).

14. During the first month of my employment I suffered a serious health set back and again told this information to my supervisor, Mr. Chen and Counsel, Mr. Weiss.

15. I shared the nature of my illness (specifically asthma and sarcoidosis) with my co-workers (Nancy Lu and Danny Bracciale) and all four members the Human Resources Department.

16. From the outset of my employment, Christopher Weiss, Chen Xuefeng, Nancy Lu, Danny Bracciale and the Human Resources Department were aware of my health condition.

17. Soon after revealing my illness, Nancy Lu (an individual with a superior job classification to me) began treating me differently and discriminating against me.

18. Nancy Lu began subjecting me to harassing and offensive conduct.

19. Nancy Lu's harassment of me began with aggressive emails and other verbal assaults regarding my illness, my culture, my race, my color and that of my Iranian husband.

8. On numerous occasions Nancy Lu took the liberty of docking me for time off in a manner that violated the company's policies contained in their handbook and in violation of New Jersey's wage and hour wage payment laws.

20. After months of enduring Nancy's behavior, reporting it to my supervisor, and having no change in how I was being treated I again approached Mr. Chen Xuefeng and told him that I could not work under these conditions. Mr. Chen told me that Nancy Lu had a problem with my illness and that I had missed days from work because of it.

21. I tried to focus on my work and continuously mentioned Ms. Lu's harassment to Mr. Chen Xuefeng, Danny Bracciale (Both employees who held supervisory positions) and Chris Weiss.

22. Ultimately, I was subjected to Nancy Lu's violent behavior and harassment on March 2, 2005.

23. I reported the incident to Richard Stelzner of the Human Resources Department. Richard Stelzner did nothing and told me to ignore Nancy Lu.

24. I also told Richard that I felt Nancy had been discriminating against me for months and that the matter needed to be resolved. I told him there was a lot of discrimination within the company.

25. I took the advice of the Human Resources Manager, Richard Stelzner and ignored the matter until later that afternoon when at such time Nancy Lu raced into my office and began yelling at me and creating a scene while standing over me with my office door open. I was in fear of my safety and asked Nancy Lu to leave my office.

26. Nancy Lu unilaterally closed my office door and continued her verbal tirade causing me to feel very uncomfortable, trapped and with no place to retreat.

27. I stood up from my desk chair and tried to leave the office however Nancy blocked my path.

28. By the time Nancy Lu finally opened the door I was profoundly upset and disturbed at having been harassed and assaulted in such a verbally and physically threatening manner.

29. I immediately reported the incident to Jim Kemp, Human Resource Manager.

30. On or about March 3, 2005, and at Jim Kemp's request I filed a written complaint of harassment against Nancy Lu.

31. On March 4, 2005, just one day after filing my complaint of harassment, discrimination, and underpayment of my salary, Mr. Chen, Mr. Kemp and Mr. Chen's temporary replacement, Vice-President Chao Xu, called me into a meeting and told me that Nancy Lu would now be my supervisor and begin supervising me on a daily basis.

32. Just one week prior to this Nancy Lu had been promoted to Assistant General Manager. My coworker, Danny Bracciale and I questioned whether we were to begin reporting to Nancy Lu and were told, "No, the reporting structure will not change. You do not report to Nancy."

33. During the March 4, 2005 meeting Danny Bracciale was on vacation. However, I, alone, was called into a meeting with Human Resources for a "simple" change in staff structure. This was unusual and not within the realm of the Human Resources, the Group nor Americas normal course of business.

34. No Defendant had responded to my documented claims of verbal and physical harassment by requiring me to report to my harasser prior to making my harasser my new supervisor.

35. This inappropriate response confirmed the company's lack of concern for my safety and well-being as well as the ongoing discrimination and disparite treatment.

36. By a memo dated more than two weeks after the event, on March 14, 2005, Mr. Kemp replied to my letter of complaint.

37. Mr. Kemp advised me that the company felt that Nancy would apologize to me, that she needed training regarding her interpersonal skills, that the company would take no further action and that I was required to report to Nancy.

38. I continuously attempted to meet with Human Resources (as per their response and invitation) to discuss open issues raised in the company's response letter as well as my own concerns for my safety, health and working for someone I was fearful of.

39. I repeatedly explained to Jim Kemp and Chao Xu that I was fearful of Nancy Lu and afraid to meet with her alone as the situation had not yet been remedied.

40. Nancy Lu's behavior towards me, and in general, continued to be hostile and harassing.

41. On March 21, 2005, I asked Jim Kemp when Nancy Lu would attend training and apologize to me as stated in the company's response letter.

42. No apology was ever forthcoming, Nancy Lu did not attend training and she again continued her harassment.

43. As a direct result of the ongoing harassment by Nancy Lu, I suffered respiratory problems, anxiety, panic attacks, insomnia and other debilitating physical and emotional conditions.

44. I sought treatment by no less than three health care professionals and was prescribed medication.

45. Medical professionals recommended an absence from my work environment in order for me to recoup.

46. Accordingly, I was forced to take some sick days during the weeks of March 7, 14, and 21.

47. I conscientiously kept Jim Kemp, Chao Xu and Nancy Lu updated about my condition and absence.

48. Due to the hostile work environment, which caused a relapse of my medical conditions, I kept up to date, to the best of my abilities, with my job responsibilities from home, which I had previously been authorized to do by Chen Xuefeng.

49. I also had a genuine concern for my safety and was physically, mentally and medically unable to report to work.

50. I had a doctor's note stating when I could return to work.

51. Because I was still unable to work due to the harassment and resulting illness and fallout from my complaint, including the company's refusal to orchestrate a resolution to the matter, on March 28, 2005, I sent an email to Jim Kemp and Chao Xu asking for the necessary information and paperwork required to file a workers' compensation claim.

52. In response, Chao Xu asked to meet with me at the Group/Americas USA headquarters.

53. Despite not feeling well, on or about March 29, 2005, I reported to the Cosco offices and was terminated by Jim Kemp and Chao Xu.

54. At no time prior to this was I ever counseled on any issues of absenteeism or poor work performance, nor were they raised during my performance reviews, thus indicating the pretextural nature of the reasons.

55. The Group, Americas, Ms. Lu, Mr. Kemp, Mr. Stelzner and Mr. Xu all knew my absences were a result of my lung conditions, which conditions were exacerbated by the harassment I endured at work; nevertheless they cited these absences as a basis for my termination in violation of the New Jersey Law Against Discrimination and the Americans with Disabilities Act.

56. Group/Americas failed to reasonably accommodate my medical conditions.

57. Group/Americas reliance on these medically based absences as a basis for termination amount to discrimination and failure to accommodate under New Jersey Law Against Discrimination and the Americans with Disabilities Act.

58. The timing of my termination from Group/Americas is suspicious as it occurred only one day after I requested information so that I could file a workers' compensation claim and soon after my repeated notices to Group/Americas that they had failed to properly address my harassment claim or pay me the correct wages.

59. Group/Americas' actions violated the New Jersey Conscientious Employee Protection Act and the Workers' Compensation Law.

60. Group/Americas failed to take action against Nancy Lu and failed to remediate the hostile work environment and offensive work environment to which I was subjected during my employment, including but not limited to hostile work environment, harassment, negligent retention, false imprisonment and violations of New Jersey's wage and hour wage payment laws.

61. Group/Americas' act of terminating me was discriminatory and retaliatory. They failed to accommodate my medical disability under New Jersey Law Against Discrimination and the Americans with Disabilities Act. In additional, the Defendant's engaged in false imprisonment and violations of New Jersey's wage and hour wage payment laws

### INJURY

As a result of the Defendant's actions I have been injured from a financial, professional and medical standpoint.

### DEMAND FOR RELIEF

I believe I am entitled to the following relief:

Compensatory and punitive damages in the amount of Five Million Dollars ($5,000,000.00).

The undersigned declares under penalty of perjury the she is the plaintiff in the above action, that she has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. Section 1746; 18 U.S.C. Section 1621.

On this 28th day of December, 2006.

Kimberly E. J. Moussavian