NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY E. J. MOUSSAVIAN, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>CHINA OCEAN SHIPPING COMPANY :<br>AMERICAS INC., COSCO NORTH :<br>AMERICA INC., 100 LIGHTING :<br>WAY, INC., COSCO SERVICES, INC., :<br>COSCO TERMINALS, INC., SEA :<br>EAGLE LOGISTICS, INC., SEA :<br>MARK MANAGEMENT, SEA TRADE :<br>INTERNATIONAL, INC., SOUTH :<br>BAY LIGHTING WAY, INC., WORLD :<br>OCEAN (AMERICA), INC., YUAN HUA :<br>TECHNICAL & SUPPLY CORP., :<br>CHINA OCEAN SHIPPING :<br>(GROUP) COMPANY, COSCO :<br>CONTAINER LINES CO, LTD., COSCO :<br>AGENCIES, INC. (COSAG-LOS :<br>ANGELES), INTERMODAL BRIDGE :<br>SERVICES, INC., SEPTOR :<br>INTERNATIONAL, INC., :<br>NANCY LU, JAMES KEMP, :<br>RICHARD STELZNER, and CHAO ZU, :<br>:<br>Defendants. :<br>: | Civil Action No.: 06-4818 (JLL)<br><br>**OPINION** |

For Plaintiff: Kimberly Moussavian, pro se
For Defendants: Brian P. Crowner (*Duane Morris LLP*)
         Thomas G. Servodido (*Duane Morris LLP*)

**LINARES**, District Judge.

1

This matter comes before the Court on the motion for summary judgment [CM/ECF #44] of China Ocean Shipping (Group) Co. Americas Inc., et al., ("CAI" or "Defendant") filed on January 7, 2009. There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendants' motion is granted.

## BACKGROUND

The facts in the record are drawn from Defendants' unopposed L. Civ. R. 56.1 statement and relevant additional materials submitted by the pro se Plaintiff. L. Civ. R. 56.1(a); Hill v. Algor, 85 F. Supp 2d 391, 408 n.26 (D.N.J. 2000) ("Under L. Civ. R. 56.1, facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.").

CAI is a company headquartered in Secaucus, New Jersey, which is a "regional administration and management center for China Ocean Shipping (Group) Company" in the Americas. (Def. 56.1 Statement ¶ 1.) Plaintiff Kimberly Moussavian ("Plaintiff" or "Moussavian") joined CAI in April 2004 as Corporate Paralegal in CAI's Planning & Development Department ("P&D"). (Id. ¶ 2.) Moussavian's job responsibilities as CAI included "monitoring all legal matters, including business licenses for each of CAI's entities in each state in which they operated, real estate leases, and litigation matters." (Id. ¶ 4.)

On February 22, 2005, Xu Chao ("Xu") became the General Manager of P&D. (Id. ¶ 12.) Xu promoted Nancy Lu ("Lu") to the position of Assistant General Manager of P&D, and told Moussavian and another P&D employee that they would be reporting to Lu prior to March 3, 2005. (Id. ¶¶ 15-16.) Lu had been previously assigned to monitor attendance of P&D employees. (Id. ¶ 7.)

2

On March 2, 2005, Moussavian and Lu had a confrontation, memorialized by Moussavian in a memorandum to James Kemp ("Kemp") in which Moussavian complained of harassment by Lu. (Id. ¶ 9.) The confrontation in question, as described in Moussavian's memorandum, concerned a misunderstanding over the handling of a work matter and a disagreement over whether Lu's emails were rude. (Pl. Opp. at 19-20.) The next day, March 3, 2005, Xu again informed Moussavian that she would be reporting to Lu; at that time, Xu did not know of the confrontation or alleged harassment. (Def. 56.1 Statement ¶¶ 17-18.)

During March 2005, Moussavian was absent from work without leave and refused to meet with or take orders from her supervisor. (Id. ¶ 19.) After examining the history of Moussavian's absences during her employment and what it considered to be insubordination in March 2005, CAI decided to terminate Moussavian on or about March 22, 2009. (Id. ¶¶ 20, 23.) Moussavian had been absent from work 31.5 days during her nine months with CAI in 2004, and 40 days during the first three months of 2005. (Def. Br. at 6.) CAI terminated Moussavian on March 29, 2005. (Def. 56.1 Statement ¶ 25.) Prior to her termination, neither Xu nor Lu decreased Moussavian's compensation. (Id. ¶¶ 27-28.)

## DISCUSSION

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### A.   Discrimination and Retaliation Claims

Assuming arguendo that Moussavian can establish a prima facie case of discrimination or retaliation under Title VII, the ADA, the NJLAD, or for retaliation for seeking worker's compensation benefits, this Court finds that Moussavian has not met her burden in demonstrating that the reasons for the adverse employment actions against her were pretextual. Moussavian's Amended Complaint asserts two adverse employment actions: termination and failure to pay her for work she performed. (Am. Compl. ¶¶ 53-54, 58.) CAI states that its legitimate, nondiscriminatory rationale for terminating Moussavian was that she was excessively absent and insubordinate, and also that it did not underpay Moussavian. Plaintiff's absenteeism and insubordination are supported by the record before the Court: Moussavian was absent from work 71.5 days in approximately one year of employment, and she refused to meet with her supervisor in March 2005. (Def. 56.1 Statement ¶¶ 19-20; Second Pl. Opp. Br. at 5.)

4

As CAI has met its burden of production to establish a legitimate, nondiscriminatory rationale for terminating Moussavian, the burden shifts back to Moussavian on the issue of pretext. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). "[T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. See also Morris v. Siemens Components, Inc., 928 F. Supp. 486, 494 n.5 (D.N.J. 1996) (requiring evidence of pretext to survive summary judgment on retaliatory discharge claim).

### 1. Termination

Moussavian does not directly argue pretext as to her termination in either of her opposition briefs. She calls into question CAI's accounting of the days she was out of work, but does not dispute that she was out of the office on those days. (Second Pl. Opp. at 5.) Moussavian admits that she did not meet with Lu following their confrontation because she was not comfortable meeting with Lu until her Complaint had been resolved. (Id. at 4.) Although Moussavian claims that a "reasonable accommodation" could have been achieved, Lu was her immediate supervisor and she did not meet with her because she was uncomfortable in Lu's presence following the confrontation. (Id. at 4.) Moussavian also directed that at such a meeting, Lu would apologize to Moussavian. (Id.) Moussavian further admits that she was out of the office during March 2005 because of the confrontation and complaint, though she was still able to work:

> Upon my return to work I was diligent in following up and stepping right back into my daily responsibilities until the March incident in which Ms. Lu attacked me. Furthermore, I was ill during the week of March 17th and was unable to report to work on certain other days when I was specifically out of the office due to the actions and inaction of Defendants. I was able to conduct work activities from home as I had done (and was permitted and requested to [by a former supervisor]) on previous occasions and did so as needed.

(Id. at 5.) These facts indicate that with respect to her termination, Moussavian meets neither pretext prong. Fuentes, 32 F.3d at 764. Moussavian fails to point to any direct or circumstantial evidence causing a reasonable factfinder to disbelieve her insubordination or believe that CAI was motivated by discrimination in terminating her. Id. Personality conflicts between employees and managers do not, without more, constitute discrimination. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1086 (3d Cir. 1995). See also Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989) (finding that insubordination can be a legitimate nondiscriminatory reason for discharge). CAI is, therefore, entitled to summary judgment on Moussavian's claims for discrimination and retaliation for her termination under Title VII, the ADA, the NJLAD, or New Jersey's worker's compensation laws.

### 2. Payment of Wages

Moussavian also asserts, in addition to being terminated, that CAI engaged in an adverse employment action against her by "docking me for time off in a manner that violated the company's policies contained in their handbook and in violation of New Jersey's wage and hour wage payment laws." (Am. Compl. ¶ 19.) CAI asserts that she has failed to state a prima facie case or presented evidence concerning pretext with regard to her discrimination claim on her

wages.

This Court agrees with CAI on the issue of pretext. The parties disagree over whether Moussavian was overpaid or underpaid during 2004. The parties also disagree as to the characterization of Moussavian's various absences from CAI, and whether or not CAI made a distinction between different types of leave in calculating absence totals. Even assuming an underpayment by CAI, however, Moussavian does not dispute the number of days she was absent, nor does she point to evidence—direct or circumstantial—indicating that CAI's calculation of her wages was motivated by invidious discrimination or through which a fact finder could disbelieve CAI's articulated reason for any underpayment. Fuentes, 32 F.3d at 764; Sec. Pl. Opp. Br. at 5. At most, Moussavian contests that certain days were absences and claims that Lu's role as "attendance monitor" was outside the rules prescribed in the Company Handbook. (Sec. Pl. Opp. Br. at 5-6.) These arguments go to the issue of whether or not CAI's payments to her were an adverse employment action, but do not address the issue of pretext. This Court cannot conclude from the evidence presented by Moussavian that CAI's legitimate nondiscriminatory reason for its wage payments to her constituted a pretext for discrimination, as Moussavian does not put forward an argument that its reasons were pretextual. This Court, therefore, grants summary judgment to CAI on the issue of discriminatory or retaliatory nonpayment of wages under Title VII, the ADA, the NJLAD, or the applicable worker's compensation laws.

**B.     Harassment**

In order to make out a claim of harassment under Title VII, the ADA or the NJLAD, a

7

plaintiff must show that "(1) he suffered intentional discrimination [based on a protected category]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." See Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (stating standard for hostile work environment under Title VII). CAI argues that Moussavian's claim for harassment does not satisfy the first, second, or fourth elements for a harassment or hostile work environment claim. (Def. Br. at 30-35.) Moussavian, in her opposition brief, emphasizes the physical intimidation she felt in the presence of Lu, but does not make specific arguments related to her harassment claim. (Sec. Pl. Opp. Br. at 4-5.)

Moussavian's harassment claim rests upon her interactions with Lu over the course of her employment, including the absence monitoring by Lu in 2004 and 2005 and the confrontation with Lu in March 2005. The emails submitted by Moussavian concerning the absence monitoring demonstrate differences between herself and Lu as to the calculation of Moussavian's absences, but the Third Circuit Court of Appeals has "rejected a theory of harassment so broad as to dictate that any time a supervisor harasses an employee for absences the employee claims are due to a disability, that harassment is based on the employee's disability under the ADA." Barclay v. Amtrak, 240 F. App'x 505, 509 (3d Cir. 2007) (unreported) (emphasis in original). The emails in this case, therefore, do not provide sufficient underpinning for a claim of harassment under the ADA, as they do not as a matter of law provide evidence of intentional discrimination based upon a disability. Additionally, this Court agrees that emails exchanged only upon the absences of Moussavian do not constitute a regular and pervasive discrimination. Cardenas, 269 F.3d at 260.

8

The confrontation between Moussavian and Lu in March 2005 also does not provide evidence of intentional discrimination. According to Moussavian's memorandum, prepared the following day, the March 2 confrontation occurred because of a disagreement over a work matter and the continuing friction between Lu and Moussavian. (First Pl. Opp. Br. at 18-22.) Moussavian's description of her prior relationship with Lu mentions a single ambiguous statement which Moussavian felt was racially offensive: "[y]ou know, you even talk like one of those Indian people now. You know the way you talk without sentence." (Id. at 19.) Beyond this statement, Moussavian merely alleges that Lu was rude and abrasive. This Court finds that these facts do not support a finding of discriminatory harassment, as even if Lu's statement concerning persons of Indian extraction was intentionally discriminatory, Moussavian has not produced evidence of either regular and pervasive discrimination nor has she supported a finding that a reasonable person in her position would have been detrimentally affected by her treatment by Lu. In fact, Moussavian alleges the opposite: she places great emphasis on her prior personal history, claiming that she was especially susceptible to harm from a confrontation with Lu because of an incident that had occurred in 1990. (Sec. Pl. Opp. Br. at 4.) Such a special susceptibility does not support a finding that a reasonable person in Moussavian's shoes would have endured a detrimental effect from working alongside Lu. Cardenas, 269 F.3d at 260. This Court, therefore, finds that Moussavian has not set forth a claim of harassment under Title VII, the ADA, or the NJLAD because the discrimination alleged was not pervasive or regular, and also because the behavior complained of would not have detrimentally affected a similar reasonable person in her position.

9

### C. Failure to Accommodate

CAI also requests summary judgment be entered in its favor on Moussavian's failure to accommodate claim. (Def. Br. at 35.) A claim for failure to accommodate under the ADA or the NJLAD requires a plaintiff to show that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Armstrong v. Burdette Tomlin Memorial Hosp., 438 F.3d 240, 246 (3d Cir. 2006). In her opposition papers, Moussavian admits that she did not request an accommodation from CAI, but states that CAI should have extended an accommodation to her. (Sec. Pl. Opp. Br. at 7.)

In order to give notice to an employer of a need for an accommodation, no "magic words" are necessary. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999). The notice, however, "nonetheless must make clear that the employee wants assistance for his or her disability." Taylor, 184 F.3d at 313. Moussavian's expedient of simply telling her employer why she was absent is not enough to request an accommodation. "Employers cannot assume employees are disabled and need accommodations." Id. Summary judgment on Plaintiff's failure to accommodate claim is, therefore, granted to CAI.

### D. Negligent Retention

"To establish a claim of negligent hiring and supervision, the plaintiff must present evidence that: (1) the employer knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of the employee, (2) the employer could reasonably have foreseen that these qualities created a risk of harm to other persons, and (3) the employer's

10

negligence and the employee's unfitness or dangerous characteristic proximately caused the injury." Silvestre v. Bell Atlantic Corp., 973 F. Supp. 475, 486 (D.N.J. 1997). CAI contends that Moussavian has not presented evidence supporting any of these elements. (Def. Br. at 41.) This Court agrees.

Moussavian, with respect to the risk of harm posed by Lu, points only to Lu's size and the fact that Moussavian considered Lu to be intimidating. (Sec. Pl. Opp. Br. at 4.) Moussavian does not, however, aver that Lu poses any actual danger to individuals working at CAI; instead, she simply states that Lu is nearly six feet tall and shouts at her coworkers. (Id.) While Lu might not be an ideal coworker for these reasons, there is no evidence that these qualities create a foreseeable risk of harm to others, and summary judgment is granted to CAI on Moussavian's negligent retention claim.

### E.    Intentional Infliction of Emotional Distress

"Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988). Defendants assert that Plaintiff's intentional infliction of emotional distress ("IIED") claim presents nothing more egregious than "general claims of discrimination" in a workplace and does not rise to the level of outrageousness required for an IIED claim. (Def. Br. at 44.) Plaintiff states that she suffered "anxiety" and was unable to come to work to face Lu after her confrontation. (Sec. Pl. Opp. Br. at 4.)

In order to rise to the requisite level of outrageousness to support an IIED claim, "[t]he

11

conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley, 544 A.2d at 863 (internal quotation omitted). The events that caused Plaintiff's anxiety and absences, however, are not the kind of events that are beyond the bounds of decency in the modern workplace: Moussavian suffered a series of impolite emails and a nonphysical confrontation with a supervisor over the handling of a work matter, not an intolerable intrusion on her emotional state. This Court, therefore, grants summary judgment to Defendants on Plaintiff's IIED claim as it fails to demonstrate outrageousness.

### F.  State Law Wage Payment

In the Amended Complaint, Plaintiff asserted a claim under New Jersey's wage payment laws. (Am. Compl. at 2, 7.) Defendants argue that Plaintiff was, in fact, overcompensated during her employment with CAI, and therefore has no claim for unpaid wages. (Def. Br. at 45.) Plaintiff, in her opposition brief, states that Defendants' time records are inaccurate and mischaracterize some of her leave, but does not point to evidence in the record indicating underpayment. (Sec. Pl. Opp. Br. at 5.) Although Plaintiff does not contest Defendants' factual propositions in her opposition brief, she does provide some potential evidence in an earlier, more diffuse response to the instant motion. In that response, containing a complaint about discovery, a list of evidence, and assorted emails, handwritten notes, bills, and receipts, Plaintiff includes some documentation concerning her assessed time off. (First Pl. Opp. Br. at 42-61.)

New Jersey's Wage Payment Law, N.J.S.A. 34:11-4.1 et seq., protects individuals covered under the law from certain abuses in payments by employers for the services of their

12

employees. Neither party points to an individual portion of the Wage Payment Law that Defendants violated, nor to the proper legal standard for evaluating Plaintiff's Wage Payment Law claim. Assuming arguendo that CAI would have violated the law by failing to pay Moussavian for some time during her employment, however, this Court finds that Moussavian has failed to identify a material issue of fact requiring resolution by a finder of fact. Moussavian supplies some emails and earnings statements in her opposition, but those documents do not disclose any evidence putting into question CAI's calculation of her time worked. (First Pl. Opp. Br. at 42-61.) Tellingly, Moussavian's opposition brief states that her absences were often described by Lu in a manner she disagreed with, but she does not argue that the total number of days paid was too low. (Sec. Pl. Opp. Br. at 5.) This Court cannot infer from the materials provided by Moussavian without supporting argument that she was underpaid by CAI, and, therefore, this Court grants summary judgment to Defendants on this issue.

### G.   CEPA

CAI argues that Moussavian's claim under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A § 34:19-1 et seq., is barred by the statute of limitations. (Def. Br. at 48.) Moussavian does not oppose CAI's argument.

The applicable statute of limitation for a CEPA claim is one year. "Upon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction." N.J.S.A. § 34:19-5. Moussavian made her formal complaints to CAI concerning Lu's conduct and her wage issues during March of 2005. Moussavian was terminated by CAI on March 29, 2005. She filed her

13

initial complaint in this Court on October 6, 2006, approximately eighteen months after her claim accrued. Moussavian's CEPA claim, therefore, is barred by the statute of limtations and summary judgment is granted to Defendants. (Id.)

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. An appropriate order accompanies this opinion.

DATED: September 21, 2009                      /s/ Jose L. Linares
                                               United States District Judge